IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**PROFESSIONAL CREDIT SERVICE,**                                         **PLAINTIFF**
the assumed business name of Ray Klein,
Inc., a Washington Corporation

**V.**                                                            **NO. 4:23-CV-61-DMB-JMV**

**KESSA MAURAS, an individual**                                     **DEFENDANT**

**OPINION AND ORDER**

Professional Credit Service seeks a default judgment against Kessa Mauras based on Mauras' failure to pay the outstanding balance on a loan. While a default judgment is procedurally warranted, the pleadings establish a sufficient basis for its entry, and the outstanding loan balance has been established as damages, Professional Credit Service does not provide sufficient support for the attorneys' fees it requests. Consequently, the motion for default judgment will be granted with respect to the loan balance damages but denied without prejudice as to attorneys' fees.

**I**
**Procedural History**

On April 3, 2023, Professional Credit Service, the assumed business name of Ray Klein, Inc., filed a complaint in the United States District Court for the Northern District of Mississippi against Kessa Mauras, asserting diversity jurisdiction. Doc. #1 at 1. Professional Credit Service filed an amended complaint on April 24, 2024.[1] Doc. #4. The amended complaint seeks a judgment against Mauras "for the sum of $141,558.28 plus accrued and accruing interest, charges, costs, and attorney fees" based on certain notes and agreements between Mauras and John Belknap,

---

[1] Because the original complaint did not properly allege Mauras' citizenship sufficient for diversity jurisdiction, the Court ordered Professional Credit Service to show cause why the complaint should not be dismissed. Doc. #3. Professional Credit Service responded by filing the amended complaint, which properly alleges Mauras' citizenship and thus establishes diversity jurisdiction. Doc. #4 at 1.

Professional Credit Service's client. *Id*. at 4. The amended complaint contains three counts: (1) "Breach of Contract; (2) "Account Stated;" and (3) "Unjust Enrichment." *Id.* at 3–5. Mauras was personally served with process on June 1, 2023. Doc. #8.

On July 13, 2023, at Professional Credit Service's request, the Clerk of Court entered a default against Mauras. Docs. #9, #10. On August 9, 2023, Professional Credit Service filed a "Motion for Determination of Damages and Final Judgment." Doc. #11. No response to the motion was filed.

**II**
**Analysis**

Pursuant to "Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). "Under Fifth Circuit law, there are three steps to obtaining a default judgment: first, default by the defendant; second, clerk's entry of default; and third, entry of a default judgment." *Gray v. MYRM Holdings, LLC*, No. A-11-cv-180, 2012 WL 2562369, at *3 (W.D. Tex. June 28, 2012) (emphases omitted) (citing *N.Y. Life. Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)). The first two steps have been satisfied here. *See* Doc. #10 (clerk's entry of default). Thus, the only issue left to consider is whether the Court should enter default judgment. In making this determination, the Court conducts a three-question analysis: (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d at 814.

**A. Procedural Justification**

In determining whether a default judgment is procedurally warranted, a court should

consider (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial prejudice;" (3) "whether the grounds for default are clearly established;" (4) "whether the default was caused by a good faith mistake or excusable neglect;" (5) "the harshness of a default judgment;" and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, where, as here, a party fails to respond to or answer the governing complaint, there are no material issues of fact. *See Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 753 (N.D. Tex. 2020) ("[B]ecause Eltman has not filed any responsive pleading, there are no material facts in dispute."). Second, Mauras' failure to respond causes prejudice to Professional Credit Service because it "threatens to bring the adversary process to a halt, effectively prejudicing [Professional Credit Service's] interests." *Id.* Third, as mentioned above, the grounds for default (default and entry of default) have been clearly established. Fourth, there is no evidence before the Court that the "default was caused by a good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Finally, in the event Mauras later seeks to challenge the default, the Court is unaware of any facts that would make it "obliged to set aside the default." *Id*. So all factors weigh in favor of a default judgment being procedurally warranted in this case.

### B. Sufficient Basis in Pleadings

"In light of the entry of default, [a defendant is] deemed to have admitted the allegations set forth in [a] Plaintiff's Complaint." *Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d at 815. However, when reviewing a request for a default judgment, a court does not find a defendant has "'admit[ted] facts that are not well-pleaded or [] admit[ted] conclusions of law.'" *Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 496 (5th Cir. 2015) (*citing Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Addressing the "sufficient basis in the

pleadings" requirement, the Fifth Circuit has stated:

> Despite announcing that a default judgment must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings, the *Nishimatsu* court did not elaborate on these requirements. … and we have found no guidance in our own cases. Nevertheless, we draw meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint.
>
> Rule 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests. The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Detailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation.

*Wooten*, 788 F.3d at 498 (cleaned up).

### 1. Factual allegations

On January 4, 2012, Kessa Mauras signed a promissory note ("Note") with John Belknap, Professional Credit Service's client. Doc. #4 at 2. "Pursuant to the Note, [Belknap] loaned $250,000.00 … to [Mauras] which [Mauras] used to purchase from [Belknap] one hundred shares of stock … in John S. Belknap, D.P.M., P.C." *Id*. Mauras "pledged to [Belknap] an interest in the stock" for security on the loan. *Id.*

On November 14, 2014, Belknap and Mauras entered a Settlement and Release Agreement ("Settlement Agreement") pursuant to which they agreed (1) to modify the payment schedule under the Note, (2) a 4.00% per annum interest rate, and (3) the loan balance as of November 15, 2019, was $225,000. *Id*. The next day, they entered a second promissory note ("Amended Note") consistent with the Settlement Agreement. *Id*. Pursuant to the Amended Note and the Settlement Agreement, Mauras was obligated to pay $1,586.61 to Belknap monthly until January 4, 2019, when the loan would become due in a single payment. *Id*. "Pursuant to the Note and the Amended Note, [Belknap] is entitled to recover all expenses reasonably incurred in enforcing [Belknap's]

rights thereunder, including without limitation reasonable attorneys' fees." *Id*. at 3.

On May 20, 2019, Mauras and Belknap entered a Note Extension Agreement ("Extension Agreement") under which (1) they agreed to extend the loan's maturity date to January 4, 2021; (2) Mauras agreed the 4.00% per annum interest rate and the $1,586.71 monthly payment amount would remain unchanged; and (3) Mauras agreed the unpaid loan balance as of January 4, 2019, was $168,554.61. *Id*.

"The Loan matured without modification on January 4, 2021, at which time all principal, interest, and other amounts under the Loan became due." *Id*. Mauras failed to pay the outstanding loan balance. *Id*. The last payment Mauras made on the loan was July 7, 2021. *Id*. "[Belknap] made demand upon [Mauras] to pay all amounts owing under the Loan Documents, but [Mauras] failed and/or refused to do so." *Id*.

On April 28, 2022, Belknap and Professional Credit Service entered a Collection Service Agreement which authorized Professional Credit Service to collect "all outstanding amounts due" to Belknap by Mauras. *Id.* at 4.

### 2. Breach of contract claim[2]

To establish its breach of contract claim, Professional Credit Service must show "(1) the existence of a valid and binding contract, and (2) … that the defendant has broken, or breached it." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 991 (Miss. 2021) (citations and internal quotation marks omitted).[3] A contract exists when six elements are present: "(1) two or more

---

[2] Though the amended complaint contains three counts—"Breach of Contract," "Account Stated," and "Unjust Enrichment"—Professional Credit Service's brief discusses only the Amended Note (without expressly referencing its breach of contract claim), which the Court construes as implicating only its breach of contract claim. *See* Doc. #12 at 4–5 (relying solely on the Amended Note). So the Court need not discuss the two remaining counts.

[3] The Amended Note provides that it is "governed by the laws of the State of Oregon, without giving effect to any conflict-of-law principle that would result in the laws of any other jurisdiction governing this Note." Doc. #4-3 at PageID 36. But Professional Credit Service relies exclusively on Mississippi law in arguing for a default judgment. *See* Doc. #12. Because Professional Credit Service's brief does not include Oregon law much less point out the Amended Note's provision regarding Oregon law, the Court reviews the issues under Mississippi law. *See Fruge v.*

5

contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *White v. Jernigan Copeland Att'ys, PLLC*, 346 So. 3d 887, 896 (Miss. 2022) (citations omitted).

Professional Credit Service alleges the existence of an agreement between Belknap and Mauras (two or more contracting parties) specifying that Belknap provided Mauras a loan in exchange for Mauras buying stock in Belknap's company and paying back the loan at a specified interest rate (consideration). Doc. #4 at 2. Professional Credit Service attached to the amended complaint all contracts between Mauras and Belknap—which contracts provide definite terms for the loan agreement, interest rates, and payment plans—and both parties accepted and agreed to their terms.[4] Docs. #4-1, #4-2, #4-3, #4-4. There is no indication any party lacked capacity to contract. *See Manhattan Nursing & Rehab. Ctr., LLC v. Hollinshed*, 341 So. 3d 991, 993 (Miss. Ct. App. 2022) ("'The law presumes a person sane and mentally capable to enter a contract. The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental capacity to establish it by a preponderance of proof.'") (internal alteration omitted) (quoting *Frierson v. Delta Outdoor Inc.*, 794 So. 2d 220, 224 (Miss. 2001)). Finally, the Court is unaware of any legal prohibition precluding contract formation. Accordingly, Professional Credit Service has alleged the existence of a valid contract and its breach by Mauras. There is a basis in the pleadings to support Professional Credit Service's breach of contract claim against Mauras.

---

*Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) ("Failure to raise an argument before the district court waives that argument, including an argument for choice-of-law analysis."). And according to the amended complaint, Mauras "is an individual residing and doing business in Washington County, Mississippi." Doc. #4 at 1.

[4] Exhibit A is the Note, *see* Doc. #4-1, and Exhibit B is the Settlement Agreement, *see* Doc. #4-2. Exhibit B is not signed. However, the Amended Note, Exhibit C, is signed by both parties. *See* Doc. #4-3. And the Extension Agreement, Exhibit D, is signed by Mauras. *See* Doc. #4-4.

### C. Form of Relief

"A default judgment establishes the defendant's liability but not the quantity of damages." *L. Funder, LLC v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019). Rather, "the burden of establishing damages rest[s] squarely and solely on [the plaintiff]." *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011). Relying on the affidavit of Justin Murphy, Professional Credit Service seeks $145,100.94, "inclusive of accrued interest to date, late fees and charges, plus attorneys' fees in the amount of $3,330.44, for a final judgment amount of $148,431.38. Such final judgment should accrue post-judgment interest at the legal rate of 5.33% per annum until paid in full." Docs. #11-1, #12.

#### 1. Loan balance

Regarding Mauras' loan balance, Murphy attests that (1) the loan "matured without modification on January 4, 2021," per the parties' extension agreement; (2) Mauras "failed to pay the outstanding balance on the loan" and the last payment on the loan was in the amount of $1,586.11 on July 7, 2021; (3) Belknap demanded Mauras "pay all amounts owing under the loan documents, but [Mauras] failed and/or refused to do so;" and (4) "as of August 2, 2023, the amount required to satisfy the outstanding balance owed by [Mauras] to [Belknap] is in the amount of $145,100.94." Doc. #11-1 at 3. Considered with the documents Professional Credit Service attached to the amended complaint and in the absence of any contradictory evidence from Mauras, the Court determines with reasonable certainty that the outstanding loan balance is $145,100.94.[5] *See Gross v. RSJ Int'l, LLC*, No. 11-73, 2012 WL 729955, at *5 (E.D. La. Mar. 6, 2012) ("Even when a request for damages "rests upon [a party's] own affidavit, … the showing of damages is

---

[5] The Court subtracted the per annum interest rate of 4.00% and monthly payment of $1,586.61 (starting from January 4, 2019, and ending on the date of last payment—July 7, 2021) from the agreed upon loan balance of $168.554.61 (as of January 4, 2019). Doc. #11-1 at 3.

sufficient, absent any evidence to the contrary.").[6] Interest on that amount will be awarded accordingly.[7]

### 2. Attorneys' fees

Where attorneys' fees are authorized by contract under applicable law,[8] the Court may award such fees. *See Norris v. Causey*, 869 F.3d 360, 373 (5th Cir. 2017) (contract agreement between parties allows for recovery of reasonable attorneys' fees). In the Settlement Agreement (which adopts the Amended Note), Mauras agreed that "should any suit or action be filed to enforce the terms of this Agreement or for the breach of the same, the losing party shall pay the prevailing party's attorney fees." Doc. #4-2 at PageID 33. But such fees must be reasonable. *See Dynasteel Corp. v. Aztec Indus., Inc.*, 611 So. 2d 977, 986 (Miss. 1992) (one-third fee for indebtedness presumptively reasonable but still subject to evaluation under "common factors for determining reasonableness of attorney's fee award"). Under Mississippi law, "certain factors should be considered when determining whether attorneys' fees are reasonable and … the trial court should make specific factual findings with regard to those factors."[9] *Cavagnaro v. Coldwell Banker Alfonso Realty, Inc.*, 995 So. 2d 754, 766 (Miss. Ct. App. 2008) (citation omitted).

---

[6] Professional Credit Service submits that "[t]he amount due on the Amended Note is made certain by the computation provided by [it] in the Affidavit of Justin Murphy submitted in support of the Motion for Determination of Damages. Therefore, no further hearing is necessary in order for this Honorable Court to render a Default Judgment in this matter in favor of [it] and against [Mauras]." Doc. #12 at 4.

[7] As to post-judgment interest, "[i]n diversity cases, federal law controls the award of post-judgment interest." *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 419 (5th Cir. 2017) (citations omitted). "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Accordingly, Professional Credit Service is entitled to post-judgment interest at the statutory rate. *See Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456–57 (5th Cir. 2013) ("Post-judgment interest is not discretionary, but shall be calculated from the date of the entry of the judgment, as a rate equal to the weekly average 1-year constant maturity Treasury yield.") (cleaned up) (quoting 28 U.S.C. § 1961).

[8] Mississippi law authorizes attorneys' fees in breach of contract cases when there is a provision for such in the contract. *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 164 (Miss. 2011).

[9] Eight factors are enumerated in Mississippi Rule of Professional Conduct 1.5, including "the time and labor required," "the fee customarily charged in the locality for similar legal services," and "the amount [of time] involved and the results obtained."

Reasonableness may be determined by calculating "the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 520 (Miss. 2007) (citations omitted).

Though Professional Credit Service seeks $3,330.44 in attorneys' fees and costs and argues such amount is presumptively reasonable, it fails to include a calculation and description of the hours its attorneys worked on the matter and the associated rates. Rather, Murphy's affidavit states in conclusory fashion only that "[t]o date, Plaintiff has incurred attorneys' fees and costs in the amount of $3,330.44." Doc. #11-1 at 4. Without underlying details of the incurred fees and costs, the Court cannot evaluate the reasonableness of the attorneys' fees and costs requested.

### III
### Conclusion

The motion for default judgment [11] is **GRANTED in Part and DENIED in Part**. It is GRANTED such that a default judgment will be entered against Mauras as to the loan balance plus interest. It is DENIED without prejudice in all other respects. Within fourteen (14) days of the entry of this order, Professional Credit Service may submit specific information supporting its request for attorneys' fees and costs. If no such information is received within that time period, the Court will issue a default judgment based on the conclusions in this order.

**SO ORDERED**, this 28th day of November, 2023.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**